Clyde W. BROOKS and James O. Anderson, Appellants,

v.

CAPITAL FLEETS, Incorporated, Appellee.

No. 1812.

Municipal Court of Appeals for the District of Columbia.

Argued June 4, 1956.

Decided July 6, 1956.

James W. Cobb, Washington, D. C., for appellants.

Seymour Korn, Washington, D. C., Samuel Barker, Washington, D. C., on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This was a suit for property damage to a vehicle owned by Capital Fleets, Inc. Defendants stipulated liability so that the sole question before the trial court was the amount of damages. A finding and judgment was entered for plaintiff.

Bringing this appeal, defendants argue that due to the suspicious circumstances surrounding the receipted bill and the estimate work sheet, which were in evidence, the court erred in the amount of damages awarded. There was evidence that the collision damaged both the front and rear of plaintiff's automobile and that the expenses for which it claimed reimbursement were for repairs necessitated by the collision. It was developed during cross-examination of plaintiff's office manager that Bendall Motor Sales, Inc., which made the repairs to the automobile, and Capital Fleets were owned by the same individual but were separate corporations. The testimony also showed that Capital Fleets was in the business of renting vehicles to private concerns and that it was necessary to have a repair shop for such vehicles. Plaintiff's office manager testified that, as far as he knew, the prices in the repair shop were fair and reasonable. It was further shown that Capital Fleets

actually paid for the repairs and that their entry was not made merely for bookkeeping purposes.

Defendants called a repairman who qualified as an expert. He did not see the vehicle involved but testified that the repair bill submitted was not proper on its face. He testified that there was a discrepancy in the dates on the summary sheet and the itemized sheet for parts and labor; that the summary sheet should be compiled after the work had been completed and not before, as indicated by the discrepancy in the dates on the two sheets in question. However, in answer to a hypothetical question, he stated that if such damages were sustained, the bill was not excessive.

Defendants base a major part of their argument on the repairman's testimony that the summary sheet was prepared before the estimate sheet and that this was not a proper procedure. However, a scrutiny of these exhibits fails to reveal that such was the case. The summary sheet is divided into two parts, the upper portion for identification and the lower portion for description of the work or operation. The upper portion of the sheet reveals that the automobile was received at Bendall's at five[1] on August 24, 1955, and further identifies the vehicle by its make, model, year and license number. Below this, in columns which make up the remainder of the sheet, is set forth a general description of the labor performed and its cost. The repairman's conclusion was largely based on the discrepancy in dates. However, the trial court could have found that no such discrepancy existed and that the date on the summary sheet merely referred to the date the automobile was received in the shop for repairs and not to the date the repairs were made.

We have held that where damages to an automobile are such that they may reasonably be repaired, restoring the vehicle to substantially its condition prior to the injury, the measure of damage is the fair and reasonable cost of repairs[2] and that a paid bill is sufficient prima facie evidence of the amount of damages absent suspicious circumstances. While we think it would have been far more satisfactory to have had the person who actually made up the estimate sheet testify in order to explain, if necessary, any item appearing thereon, and who undoubtedly could have put to rest any question concerning the dates listed on these sheets, we are satisfied that the evidence was sufficient to support the finding of the trial court. The record shows that a continuance was granted defendants to obtain the presence of a police officer who appeared at the scene of the collision but it is silent as to any request by defendants to have the person who made the estimate appear, which should have been done if the damages claimed were thought to be exaggerated.

As we stated in the Hemminger case [111 A.2d 620]:

"* * * Plaintiff fulfilled the requirements necessary to establish a prima facie case of damages and the defendant then had the burden of going forward with any evidence he may have had to mitigate or abate the damages by showing the amount to be less. This he chose not to do. Not being a jury trial, it then became a question for the court to decide as to whether the plaintiff had met the burden of proof. * * *"

We cannot say that the record before us compelled the trial judge to say that the circumstances here were such as to prohibit the entering of a finding and judgment for plaintiff.

Affirmed.

---

1. It is fair to assume that this was 5 P. M.

2. Hemminger v. Scott, D.C.Mun.App., 111 A. 2d 619, and cases cited therein.