## NUNAN v. TIMBERLAKE.

### No. 6524.

United States Court of Appeals for the District of Columbia.

Decided June 29, 1936.

Alfred D. Smith, of Washington, D. C., for appellant.

Lester Wood and Karl J. Hardy, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia entered upon a verdict in favor of the appellee. The suit was in tort for negligence.

The facts are as follows: In the early hours of February 11, 1934, the appellee, B. Elizabeth Timberlake, plaintiff below, was riding to her residence in Washington, D. C., in the automobile of the appellant, J. Raymond Nunan, defendant below. On the way, the car ran into the beacon light and concrete abutment of a street car safety zone on Connecticut Avenue, and the appellee was injured. She charged the appellant with negligence, which the appellant denied, and he counter charged contributory negligence and assumption of risk. At the trial, the appellee introduced evidence concerning the nature of her injuries [1] and the resultant damage, including doctors' bills, hospital expenses, medicines, x-rays, nursing service, and other expenses, and damage through injury to her clothing and loss of earnings. The case was submitted to a jury, which returned a verdict of $3,500. A motion for a new trial was overruled.

The appellee has moved to dismiss the appeal upon the basis of the following: Apparently the trial court had fixed June 21, 1935, as the date for settling and signing the bill of exceptions, and apparently also the assignment of errors had not been filed on that date, up to the time the motion to dismiss hereinafter mentioned was made. [2] On June 21st, upon the ground that the assignment of errors had not been filed, the appellee moved, in the trial court, to dismiss the appeal. This motion was on the same day overruled. On the same day the trial court extended the time for the set-

---

[1] She received a fracture of two bones of the right foot, lacerations of the forehead and chin, and several bruises. Her foot was in a cast five or six weeks.

[2] These facts do not appear from the record, except by inference, but they are asserted in the appellee's brief, and there is nothing to the contrary in the appellant's brief.

tling and signing of the bill until June 24th. [3] But on June 21st—presumably after the making and denying of the motion to dismiss the appeal—the assignment of errors was filed. The appellee now renews in this court the motion to dismiss. The motion must be denied. It is true that the assignment of errors must be filed in the office of the clerk of the trial court prior to the settling and signing of the bill of exceptions. Rule V, paragraph 9, Revised Rules for the United States Court of Appeals for the District of Columbia, effective December 21, 1927. But by Rule XV, paragraph 1, in a case where there is a bill of exceptions, a 90 day period after the perfection of the appeal is allowed within which to produce and file the transcript of the record, including the bill. In this case the record shows that the appeal was perfected on April 5, 1935, and that the assignment of errors was filed on June 21st, and that the bill of exceptions was settled and signed on June 24th. Therefore the assignment of errors was filed before the settling and signing of the bill, and the bill was settled and signed within the period allowed by law. We know of no reason why the trial court might not, as it apparently did, extend the time for settling and signing the bill from the 21st to the 24th of June, so long as the ultimate settling and signing was within the 90 day period.

Appellant's assignment of errors, as argued in his brief, presents the following points:

**1.** On cross-examination of the appellee, the attorney for the appellant secured an admission that a day or so after the accident, while in the hospital, the appellee had made a statement which was taken down in writing and then signed by her. The statement was then produced and read to the jury and was as follows:

"I live at the Gordon Hotel, Washington, D. C., and work at the Department of Agriculture. I am twenty-six years of age and unmarried.

"On early Sunday morning, February 11, 1934, around three thirty A. M. while riding as a guest in the car of R. Nunan south on Connecticut Avenue N.W., when for some reason we skidded and hit the light standard on the north end of the loading platform at Connecticut Avenue and L Street N.W. The next thing I remember I was in Emergency Hospital.

"The streets were icy and Mr. Nunan was driving carefully on account of the ice. Mr. Nunan was not speeding and was driving very considerately. I do not know whether there was any one on street or not—in fact, I was really paying very little attention. We were on the way to my home. Neither myself or Mr. Nunan were under the influence of intoxicants of any sort.

"I am making no claim on Mr. Nunan except for my doctors until entirely well, hospital, loss of time and I am not hiring any attorneys or starting any fights. I cannot pay my expenses and I have to have those.

"I have read the above statement and same is true and correct to the best of my knowledge and belief.

"Dated February 12, 1934.
"(Signed)          B. E. Timberlake
"Witness:
"Carey E. Quinn."

On re-direct examination the appellee, over the objection of the attorney for the appellant, was permitted to testify that a man came to see her in the hospital, told her that the appellant Nunan was in the hospital seriously hurt and not expected to live and that it would be a great deal of help for her to sign the statement, and also agreed to pay the medical bills and expenses of the appellee. It is urged that the testimony thus objected to was in the nature of an offer of compromise and as such incompetent. There was no error in the trial court's ruling. The appellant, having seen fit through his counsel to introduce the statement in evidence as a part of the cross-examination, opened the door to an explanation by the appellee of the circumstances surrounding the making and signing of the statement, including any inducements so to do. West v. Smith, 101 U.S. 263, 25 L.Ed. 809. The statement itself, as introduced by the appellant, was in the nature of an offer of compromise.

**2.** On cross-examination of one of the appellee's doctors who, on direct ex-

---

[3] It also does not appear from the record, except by inference, that there was any formal extension of the time, but this again is asserted in the appellee's brief and there is nothing in the brief of the appellant to the contrary; and the record does show that the actual settling and signing of the bill was on the 24th of June.

amination, had described in some detail the appellee's injuries and the treatment thereof, and had said that "it was inadvisable for the plaintiff to return to work on the 17th day of March * * *" the attorney for the appellant brought out "that the fractured bones were in good position and knit in proper place, at the time the cast was removed the bones were fully knit, that the use of the foot might aggravate [the] condition a little bit, might cause a little swelling but as to permanent injuries witness did not think there was any." Thereupon appellant's attorney sought to state to the witness the testimony of the appellee as to her use of the foot after removal of the cast, apparently in order to lay a foundation for further cross-examination. To this the appellee's counsel objected upon the ground, apparently, that the statement sought to be made to the witness was not a correct reflection of the appellee's testimony as to her use of the foot. The objection was sustained. The record does not show in terms what appellant's counsel wished to state to the witness. For this reason we cannot say that the trial court improperly limited the cross-examination.

3. The appellee offered in evidence the bills of two doctors for professional services, the bill of a third doctor for x-ray pictures, a hospital bill, and a bill for nursing service. Some of the bills had been paid, some had not. The appellee testified as to the extent and general nature of the services rendered; and one of the doctors testified in some detail as to the nature of her injuries and as to the nature and extent of his professional services. That doctor also testified that the bill for his services was reasonable. There was, however, no testimony as to the reasonableness of the other bills. Counsel for the appellant objected to admission in evidence of the latter without testimony as to the reasonable value of the services, and moved to strike the bills on the same ground. The bills were received in evidence and the motion to strike was overruled. The theory of the objections and the motion apparently was that the appellee's case for damages on account of expense of professional, hospital and nursing care was incomplete without evidence of the reasonable value of the services in question. This point is *de novo* in this jurisdiction, and there is a division of authority elsewhere. We think the better view is that in a suit in tort for personal injury the plaintiff makes a *prima facie* case by proving the professional services rendered and the amount of the bill paid or incurred. Western Gas Const. Co. v. Danner, (C.C.A.) 97 F. 882; Carangelo v. Nutmeg Farm, Inc., 115 Conn. 457, 162 A. 4, 82 A.L.R. 1320; Summers v. Tarney, 123 Ind. 560, 24 N.E. 678. Annotations on this subject are to be found in 19 L.R.A.(N.S.) 920, and 82 A.L.R. 1325.

4. Objection was taken by the appellant to the admission of testimony as to the cost of two items of her apparel alleged to have been damaged in the accident. In respect of these items, there was also testimony as to how old the articles were, and as to the nature of the injury to them. It was not error to admit evidence of the original cost as bearing upon the ultimate actual damage value.

5. The appellee testified, as a part of her case for damages through loss of earnings, that she was obliged to absent herself from work at a Government department; and in her behalf it was testified by her superior in such department that she was so absent. It was objected that her testimony and that of her superior were not the best evidence, that the official record of her absence ought to be produced. The best evidence rule requires that the contents of a document must be proved by producing the document itself. 2 Wigmore on Evidence, 2d Edition, Sec. 1174. No document, and no official act evidenced by a document, was material to the appellee's case. Her testimony was competent, as was that of her superior. The jury might have considered her omission to produce the records of her absence as some indication that they were unfavorable; but it was not bound to reject her own testimony and that of her superior on that account.

6. Appellant requested the court to charge the jury as follows:

"The jury are instructed as a matter of law that should they find for the plaintiff they should not consider in awarding damages any impairment of the nervous system brought about solely by nervous shock or fright."

The court refused this, but, as a part of its general charge, told the jury that:

"In this case, this young lady undoubtedly suffered a fracture of two bones in her foot. She suffered an injury to her forehead; she suffered an injury to her chin, and she endured pain and suffering,

and she endured suffering from nervous shock. In order to recover damages for a bad state of nerves, you must be satisfied that that nervous condition was the direct result of physical injuries. She cannot recover anything by ·reason of fright; she cannot recover anything by reason of the fact she was pretty well scared that night, but it [is] the nervous condition which directly follows the physical injury which gives her the right to recover for those things. * * *"

Exception was taken to the refusal to give the instruction requested. No objection or exception was taken to the charge given. The charge given in substance covered the charge requested. Moreover, if the appellant believed it did not, it was his duty to point out to the trial court wherein the charge given was inconsistent with the charge requested. Pistorio v. Washington R. & E. Co., 46 App.D.C. 479.

The judgment of the trial court is

Affirmed.